## Bonifield v. Cassler

*Severin A. Russo,* for plaintiff.
*Alvin J. Ludwig,* for defendant.

WETTICK, *J.,* December 17, 1980—Plaintiff (landlord) and defendant (tenant) entered into a lease 'for a residential townhouse. The lease provided for a security deposit in the sum of $425 (one month's rent) as security for the payment of damages to the leasehold premises and/or default in the payment of rent. By agreement of the parties, tenant on February 24, 1980 surrendered possession of the premises to landlord. On or about March 9, 1980 landlord by telephone informed tenant that he was holding tenant responsible for damages to the leasehold premises. In this telephone conversation,

it was agreed that landlord would retain $150 for rug cleaning and painting and would return the remainder of the security deposit. This occurred through a check dated March 9, 1980. On the back of this check which he prepared, landlord noted "received as final settlement for rental deposit on 2567 Hunting Ridge Trail, Bridgeville, Pa."

Tenant signed and cashed the check. He heard nothing further from landlord until he received a letter dated June 17, 1980 wherein landlord claimed that tenant owed him $744.50 for additional damages to the leasehold premises which he detailed by item and amount. Tenant refuses to pay these damages and landlord has filed this present claim for these damages described in his letter. Tenant claims that this action is barred by the prior settlement of the claim for $150 and by the security deposit provisions of The Landlord and Tenant Act. Presently before this court is tenant's motion for summary judgment which raises these defenses.

A summary judgment may be entered only in the clearest case where there is absolutely no issue of material fact. In considering a motion for summary judgment, the court shall conduct a complete review of the record in the light most favorable to the party opposing the motion. The moving party bears the burden of proving the absence of all genuine issues of material fact with all doubts to be resolved against that party. See Nash v. Chemetron Corp., 246 Pa. Superior Ct. 595, 371 A. 2d 992 (1977); Granthum v. Textile Machine Works, 230 Pa. Superior Ct. 199, 326 A. 2d 449 (1974).

I

The record at this stage of the proceedings does not establish that there was a prior settlement bar-

ring this claim. Both parties acknowledge that they orally agreed on March 9, 1980 that landlord would be entitled to retain $150 of tenant's security deposit and that the remainder of the deposit would be returned to tenant. Tenant claims that this agreement released both parties from any and all claims arising out of their lease agreement. Landlord, on the other hand, contends that this agreement only barred tenant from challenging landlord's right to retain $150 from the security deposit in exchange for the release of the remaining funds and that the agreement was not intended to release tenant from any claims in excess of $150 that he may thereafter make. Landlord's version of this agreement is not inconsistent with the facts that are presently before this court. Consequently, the merits of the defense of a prior settlement must be determined by a trier of fact.

## II

In the present case landlord did not within 30 days of surrender and acceptance of the leasehold premises provide tenant with a written list of damages to the leasehold premises for which landlord claims that tenant is liable. Tenant contends that landlord is therefore barred from bringing any claim for damages to the leasehold premises by section 512 of The Landlord and Tenant Act of April 6, 1951, P.L. 69, art. V, sec. 512, as amended, 68 P.S. §250.512. The relevant provisions of this act read as follows:

"(a) *Every landlord shall within thirty days of termination of a lease* or upon surrender and acceptance of the leasehold premises, whichever first occurs, *provide a tenant with a written list of any damages to the leasehold premises* for which the

landlord claims the tenant is liable. *Delivery of the list shall be accompanied by payment of the difference between any sum deposited in escrow,* including any unpaid interest thereon, for the payment of damages to the leasehold premises *and the actual amount of damages to the leasehold premises caused by the tenant.* Nothing in this section shall preclude the landlord from refusing to return the escrow fund, including any unpaid interest thereon, for nonpayment of rent or for the breach of any other condition in the lease by the tenant.

"(b) *Any landlord who fails to provide a written list within thirty days* as required in subsection (a), above, *shall forfeit all rights to withhold any portion of sums held in escrow,* including any unpaid interest thereon, *or to bring suit against the tenant for damages to the leasehold premises.*

"(c) *If the landlord fails to pay the tenant the difference between the sum deposited,* including any unpaid interest thereon, *and the actual damages to the leasehold premises caused by the tenant within thirty days after termination of the lease* or surrender and acceptance of the leasehold premises, *the landlord shall be liable in assumpsit to double the amount by which the sum deposited in escrow,* including any unpaid interest thereon, *exceeds the actual damages to the leasehold premises caused by the tenant* as determined by any court of record or court not of record having jurisdiction in civil actions at law. The burden of proof of actual damages caused by the tenant to the leasehold premises shall be on the landlord." (Emphasis supplied.)

In the present case, landlord seeks damages through a separate suit against tenant—and not through the withholding of a security deposit. Thus

the issue before this court is whether a landlord who has timely returned the entire portion of the security deposit which a tenant seeks is nevertheless barred by section 512 from bringing an action for damages to the leasehold premises for failure to provide a written list of damages.[1] This appears to be a case of first impression.

Tenant argues that a literal reading of section 512 bars a landlord from seeking any damages for which a tenant did not receive written notice. He contends that under subsection (a) a landlord must within 30 days provide a written list of any damages to the leasehold premises for which the landlord claims that the tenant is liable and that under subsection (b) a landlord forfeits all rights to bring an action against the tenant for damages to the leasehold premises if he has failed to provide this written list.

Section 512 is not as clear as tenant would have it. While subsection (a) requires every landlord to provide a list of damages within 30 days, it is not clear whether a list must be provided by a landlord who returns the entire portion of the security deposit which the tenant seeks (or, for that matter, by a landlord who does not even obtain a security deposit and who would also seem to be included in tenant's "literal" reading of subsection (a). Also,

---

1. There is no claim that the landlord has wrongfully withheld any portion of the security deposit. By agreement of the parties entered into within the thirty days of surrender and acceptance of the leasehold premises, the landlord was entitled to withhold a portion of the security deposit and he refunded the remaining portion of this deposit. Thus this case does not involve a landlord who has withheld any portion of a security deposit which a tenant claims without providing a written list of damages.

while subsection (b) (if not literally read, as we will discuss later) penalizes the landlord who violates subsection (a) by forfeiting his or her right to bring suit against the tenant for damages to the leasehold premises, tenant ignores subsection (c) which permits a tenant to recover only double the amount by which the sum deposited in escrow exceeds the actual damages to the leasehold premises which the tenant caused (i.e., under this subsection the landlord who withholds a security deposit without giving notice would appear to be entitled to retain the entire security deposit if the actual damages to the leasehold exceeded the amount of the deposit). We recognize that subsection (c), by its terms, applies only to landlords who wrongfully retain the security deposit, but this subsection is relevant to this case unless we were to conclude that the legislature intended to punish the landlord who returns a security deposit more harshly than the landlord who retains the security deposit.

Because of the ambiguity in section 512's language and the apparent conflict between subsections (b) and (c), we must determine the purpose of section 512 and construe each of its subsections in a manner that will further this legislative purpose. Security deposits are also dealt with in section 511(a)-(c) of The Landlord and Tenant Act, 68 P.S. §250.511(a)-(c), which bars a landlord from requiring security deposits in excess of two months' rent for the first year and one month's rent for the second and each subsequent year, which provides for interest payments on the security deposit, and which requires the security deposit to be placed in an escrow account unless the landlord has guaranteed return through a surety bond. Section 511(a)-(c) and section 512 constitute a legislative scheme

that is designed to limit the amount of a security deposit which a landlord may require and to protect a tenant's right to the return of the security deposit. Under subsection (a) of section 512, a landlord is still entitled to retain the security deposit for the breach of any condition in the lease. But the additional protection afforded the tenant by this subsection is his or her right to receive within 30 days a written list of the damages claimed together with the difference between the security deposit and the damages claimed. Subsection (b) provides the remedy for noncompliance with subsection (a)—the forfeiture of rights of the landlord who keeps the escrow funds without meeting the notice requirements. And subsection (c) provides the sanctions essential to ensure compliance with subsection (a)—double damages for the landlord who sues a tenant who has kept the escrow fund without providing notice. (Subsection (c) also furthers the legislative scheme of protecting the tenant's right to have the security deposit returned by providing double damages to the tenant against a landlord who wrongfully withheld the security deposit by claiming damages that were not incurred.)

Under this legislative scheme landlords are divided into two categories: those who provide written notice within 30 days of the claims for which they are retaining the security deposit and those who do not do so. Under subsection (b) the landlord who fails to provide such notice forfeits all rights to withhold any portion of the security deposit "or" to bring a suit against the tenant for damages to the leasehold premises.[2] Because the landlord has for-

2. The word "or" should be read as "and" when it is plainly intended to be conjunctive rather than disjunctive. A construction which gives "or" its ordinary meaning should not be used if

feited his or her rights to withhold any portion of the security deposit, he may be sued for double the amount of the security deposit under subsection (c). Furthermore, subsection (b)'s forfeiture will bar him from defeating the suit on the grounds that the tenant has caused damages to the premises.[3]

The second category of landlords—those who provide the written list accompanied by payment of

---

this would give a result that is absurd, impossible of execution, highly unreasonable, or tending to nullify legislative intent: Bertera's Hopewell Foodland, Inc. v. Masters, 428 Pa. 20, 36-37, 236 A. 2d 197 (1967); Com. v. Belcher, 233 Pa. Superior Ct. 212, 217, 335 A. 2d 505, 507 (1975). In subsection (b), the legislature plainly intended the word "or" to be read as "and" because it would be unreasonable and nullify the legislative intent to give a landlord who fails to provide the written list within thirty days a choice of either forfeiting his right to retain the security deposit or forfeiting his right to bring a suit against the tenant for damages to the leasehold premises. Landlords seldom sue tenants for damages to the premises once the tenants have left the premises. The problem which this legislation is designed to correct is the landlord's wrongful retention of the security deposit. The major protection of this legislation is the notice requirement and only by construing subsection (b) to provide for a forfeiture of the right to withhold the security deposit if notice is not given do we give any real meaning to the remedy provisions of section 512.

3. If we were to construe subsection (c) to permit this landlord who retains a security deposit without providing a written list to the tenant to defeat a claim for the return of the security deposit by showing actual damages to the leasehold premises, we would be giving no effect to the forfeiture provisions of subsection (b) and in addition would remove any incentive for the landlord to provide written notice (i.e., the landlord who fails to provide written notice would be no worse off than the landlord who does so). Thus at the very least subsections (b) and (c) must be construed as to this landlord to provide for a return of the security deposit and to permit evidence to be introduced as to any actual damages to the leasehold, if at all, solely for purposes of defeating a claim for double the amount of the deposit.

the difference between the amount of the security deposit and the damage claim—are not subject to subsection (b) and the only effect of subsection (c) is that if such landlords have withheld funds in excess of the actual damages, they will be liable for double that amount.

The subject of section 512 is the tenant's security deposit. Section 512 is aimed at the wrongful withholding of the security deposit. There is no indication of any legislative intent to apply subsection (b)'s harsh forfeiture provisions to the landlord who has returned the full portion of the security deposit which a tenant claims. Where a landlord seeks only to sue a tenant for alleged damages to the premises, there is no need for a tenant to receive a list of the damages within 30 days. The complaint will provide the tenant with sufficient notice and there appears to be no compelling need for a more prompt notice. The purpose of the 30 day requirement is to force a landlord promptly either to return the security deposit to the tenant or to state specifically why the deposit is being withheld. Its purpose is not to provide prompt notice of a claim for damages to the premises if no security deposit is being retained.

Because in the present case the landlord has returned the entire portion of the security deposit which the tenant claims, subsection (a) as construed by this court does not apply and consequently, the defense of noncompliance with subsection 512(a) is without merit.

For these reasons, we enter the following order of court.

## ORDER

On December 17, 1980, it is hereby ordered that defendant's motion for summary judgment is denied.